UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CYNTHIA TURNAGE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:03-CV-341 |
| ) | Phillips/Guyton |
| NORFOLK SOUTHERN CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 80] of the Honorable Thomas W. Phillips, United States District Judge, for disposition of Plaintiffs' Renewed Motion for Class Certification [Doc. 75].[1] For the reasons that follow, it is **RECOMMENDED** that Plaintiffs' Renewed Motion for Class Certification be **DENIED**.

**I.    FACTS AND PROCEDURAL HISTORY**

This is an action for nuisance arising from a train derailment that occurred on September 15, 2002 in west Knox County, Tennessee. Immediately following the derailment, one of the derailed cars began leaking sulphuric acid, creating a large cloud of dilute water and sulphuric acid mist over the derailment site. Residents within the 1.3 miles of the derailment site were ordered

---

[1] The Court conducted a hearing on this motion on June 8, 2005. Following the hearing, the parties requested that the Court reserve ruling on this motion pending the parties' attempt to mediate this matter on July 15, 2005. The parties' mediation attempt was apparently unsuccessful.

to evacuate, and it was suggested that residents within three miles of the derailment site evacuate as well. Defendants dispatched emergency hazardous material cleanup crews to the accident site, who used soda ash and lime to neutralize the leaking sulphuric acid. The mandatory evacuation lasted between 24 and 72 hours, as various communities or subdivisions were deemed safe for return and residents were allowed reentry at different times. The defendants set up several claim centers and invited the public to make claims for reimbursement of expenses for lodging, food, clothing, and other evacuation-related problems.

The plaintiff Cynthia Turnage filed a class action complaint on June 3, 2003 in the Circuit Court for Blount County, seeking damages

> on behalf of a class of all persons and business entities who suffered economic losses as a result of a train derailment on September 15, 2002 in West Knox County, Tennessee, and/or who endorsed "reimbursement checks" disbursed by the Defendants with printed matter on the reverse side of the checks which provided for the release of claims.

[Class Action Complaint]. The plaintiff sought "redress for the nuisance" created by the defendants in the form of compensatory damages, including damages for economic losses associated with the putative class members' substantial inconvenience and/or evacuation, including lost rental value; punitive damages; injunctive, declaratory, and other equitable relief; and prejudgment interest. [Id. ¶ 1]. The defendants removed the matter to this Court on June 26, 2003. [Doc. 1].

The First Amended Class Action Complaint [Doc. 6], filed August 21, 2003, and which added Bret Freeman as a plaintiff, seeks damages on behalf of a proposed class consisting of:

> (A) all persons who were evacuated by order of law enforcement as a result of the derailment and toxic spill and who suffered economic losses related to the evacuation during the relevant period; and

2

> (B) all persons who were not among the persons evacuated by order of law enforcement as a result of the derailment and toxic spill, but who nevertheless suffered economic losses related to the derailment and toxic spill during the relevant period.

[Doc. 6].[2] The plaintiffs subsequently filed a motion for class certification. [Doc. 7].

The defendants moved to dismiss the plaintiffs' allegations with respect to non-evacuees [Doc. 24], arguing that the plaintiffs had no standing to represent these members of the proposed class. The plaintiffs subsequently filed a Second Amended Complaint [Doc. 42], deleting the cause of action for damages on behalf of persons who were not mandatorily evacuated as a result of the train derailment and toxic spill, thereby rendering the defendants' motion to dismiss non-evacuee allegations moot. [Doc. 37, 38]. In an amended motion for class certification [Doc. 36], the plaintiffs requested certification of the following class:

> All persons who were evacuated by order of law enforcement as a result of the derailment and toxic spill and who suffered economic losses related to the evacuation during the relevant period.
>
> Specifically excluded from this definition are all persons who suffered personal injuries of any form, as well as the Defendants, their officers, employees, agents, and other representatives.

[Doc. 36]. The Court denied the plaintiffs' motion for class certification without prejudice on June 17, 2004, finding the motion to be premature. [Doc. 55].

The plaintiffs moved to strike the defendants' fourteenth defense related to the payment of claims and further moved to deny any claim for set-off or release for voluntary payments

---

[2]The First Amended Complaint also added Donn Stelzer as a plaintiff; however, Stelzer subsequently died, and his name was removed from the style of this action. [Doc. 40].

3

made to some of the evacuees. [Doc. 51]. The Court denied the motion on March 4, 2005. [Doc. 68]. The Court later clarified its Order, stating as follows:

> [T]he court does not find that individuals who received and endorsed "reimbursement checks" are necessarily excluded from the proposed class. As noted by Norfolk Southern, obtaining such checks did "not preclude submission of personal injury or unforeseen property damage claims in the future." However, Norfolk Southern is entitled to a set-off toward any award for damages for which an individual has already been reimbursed. Accordingly, Norfolk Southern is only potentially liable for NEW damage and injury claims.

[Doc. 71].

Plaintiffs Cynthia Turnage and Bret Freeman subsequently filed the present motion, renewing their request to certify a class action for compensatory and punitive damages on behalf of themselves and all persons who suffered economic losses as a result of the derailment. [Doc. 75]. Specifically, the plaintiffs seek certification of the following class ("Proposed Class"):

> All persons who were evacuated by order of law enforcement as a result of the derailment and toxic spill and who suffered economic losses related to the evacuation during the relevant period. Specifically excluded from this definition are all persons who suffered personal injuries in any form, as well as the Defendants, their officers, employees, agents and other representatives.

[Doc. 75]. While the plaintiffs state that they do not yet know the exact size of the proposed class, they indicate in their motion that they "believe that at least approximately 3,000 citizens in West Knox County alone were evacuated due to the derailment and the resulting leak and forming of a cloud of sulfuric acid." [Doc. 75].

In addition to filing the renewed motion for class certification, the plaintiffs also filed two discovery motions, one motion to determine the sufficiency of the defendants' responses to requests for admission [Doc. 73] and a motion to compel more complete responses to interrogatories.

4

[Doc. 84]. Specifically, the plaintiffs moved the Court to order the defendants to identify each person who received and endorsed a reimbursement check as a result of the derailment; the amount of each check; and the requirements and conditions precedent for receiving such compensation. [Doc. 84].

The undersigned conducted a hearing on the motion to certify and the related discovery issues on June 8, 2005. Following the hearing, the parties requested that the Court reserve ruling on the motions pending the parties' attempt to mediate this matter on July 15, 2005. In a letter filed on June 15, 2005 as a supplement to the hearing [Doc. 95], the plaintiffs sought to clarify the plaintiffs' position on the recovery of inconvenience damages and proposed the following class definition, based upon the allegations in the plaintiffs' First Amended Complaint:

> All persons, including those evacuated by Order of law enforcement and those who were not, who suffered all available nuisance damages, including economic losses and inconvenience, related to the evacuation.

[Doc. 95]. The plaintiffs note in the letter that the proposed class definition includes both evacuees and non-evacuees and is "not limited to any specific geographic area." The plaintiffs further state in the letter that the plaintiffs "are in the process of obtaining affidavits to satisfy the Court [that] the proposed Class is represented," and they request that the Court either temporarily stay a decision of the class certification motion until this evidence is presented or provisionally certify the class and set another hearing "to make certain all formalities have been met." [Id.].

The parties' attempt at mediation on July 15, 2005 was unsuccessful, and on July 22, 2005, the undersigned entered an Order granting in part the plaintiffs' discovery motions and ordering the defendants, among other things, to produce a list or compilation of the names of those who received reimbursement checks; the amounts of those checks; and any information relevant to

5

the requirements or conditions precedent for receiving such compensation. [Doc. 99]. The defendants were ordered to produce this information within thirty days of the entry of the Order.[3]

The defendants submitted a letter [Doc. 100] to the Court on August 8, 2005, opposing any consideration of the plaintiffs' June 15, 2005 letter [Doc. 95] because it did "not add any information that would clarify the issue of certification." The defendants argue that the plaintiffs' letter inexplicably relies upon the First Amended Complaint, which had not been a basis for litigation since January 28, 2005 when the plaintiffs filed their Second Amended Complaint. Further, the defendants point out, the plaintiffs had previously withdrawn their request to certify a class including non-evacuees, and therefore, any request to certify a class including non-evacuees was improper. [Id.].

On September 14, 2005, the Court permitted the plaintiffs to file a Third Amended Complaint [Doc. 104], in which the Proposed Class is more particularly described as follows:

> [A]ll persons who evacuated their real property and/or "sheltered in place,"[4] and/or were prevented from returning to their homes as a result of, and within a three mile radius from, the derailment and toxic spill.

[Third Amended Complaint ¶ 15]. The Third Amended Complaint seeks compensatory and punitive damages for the defendants' nuisance. [Id. ¶¶ 24, 28].

---

[3]The defendants provided this information to the plaintiffs as ordered on August 8, 2005. [Doc. 105 Ex. 2].

[4]Although this phrase is not particularly defined in the Third Amended Complaint, the plaintiffs' letter of June 15, 2005 [Doc. 95] states that "shelter in place" means "that if people chose not to leave their homes, then they were to stay there and not come and go, while also turning off their air conditioning and closing all doors and windows."

6

## II. POSITIONS OF THE PARTIES

### A. Plaintiffs' Argument

The plaintiffs argue that they meet the initial prerequisites for class certification as set forth in Rule 23(a)(1)-(4) of the Federal Rules of Civil Procedure. They submit that there are numerous questions of law and fact that are common to all members of the proposed class and which predominate over any questions affecting only individual members of the proposed class, including:

> a. Whether Norfolk Southern operated or managed the train carrying sulfuric acid;
>
> b. Whether the train operated or managed by Norfolk Southern carrying sulfuric acid derailed on September 15, 2002;
>
> c. Whether sulfuric acid leaked or spilled from the train which derailed on September 15, 2002;
>
> d. Whether the leak or rip of the tank car holding approximately 10,600 gallons of sulfuric acid produced a danger or threat;
>
> e. Whether an evacuation or shelter-in-place order was given by law enforcement agencies for parts of Knox County and Blount County;
>
> f. Whether law enforcement agencies ordered citizens, including Plaintiffs and members of the proposed class, to leave their homes and/or businesses and barred them from returning for a period of time;
>
> g. Whether Plaintiffs and the proposed class were injured or damaged as a result of the derailment and/or sulfuric acid;
>
> h. Whether Norfolk Southern's course of conduct, actions and inactions constitute a nuisance which unlawfully interfered with the rights of Plaintiffs and the members of the proposed class;
>
> i. Whether compensatory damages are owed to Plaintiffs and members of the proposed class; and

j. Whether Plaintiffs and the proposed class are entitled to punitive damages, and if so, in what amount.

The plaintiffs, as proposed class representatives, argue that their claims are typical of all members of the proposed class's claims because they arise from Norfolk Southern's common course of wrongful conduct and that the harm caused to the plaintiffs is "identical to the harm caused to all members of the proposed class." The plaintiffs further assert that they will fairly and adequately represent and protect the interests of the members of the proposed class. [Doc. 75]. In support of their motion for class certification, the plaintiffs have each submitted an affidavit.

1. <u>Turnage Affidavit</u>

Cynthia Turnage is a citizen and resident of Blount County, Tennessee. On the date of the derailment, Turnage was in Dickson, Tennessee. She learned by watching television that the derailment had occurred and that some residents were being mandatorily evacuated. She then confirmed with friends that her home was in the mandatory evacuation area. Because Turnage had her pet with her, she did not feel she could find a hotel which accommodated pets. Therefore, she stayed in Dickson with a friend. Because she did not have appropriate personal items with her, she missed work on Monday, September 16 and Tuesday, September 17, 2002. Turnage states that during the evacuation, "life was not normal and was filled with anxiety and uncertainty." She was barred from entering her home or community, and she states that she "know[s] that many others in this community were forced to evacuate because of this derailment and toxic spill and believe[s] that they incurred additional expenses." Moreover, Turnage is concerned about other possible short term or long-term effects on her friends, their homes, property, and community. [Doc. 34, Corrected Affidavit of Cynthia Turnage].

8

2. <u>Freeman Affidavit</u>

Bret Freeman resides in the Mallard Bay subdivision in West Knox County, Tennessee, with his wife and daughter. Freeman and his family were home at the time of the derailment on September 15, 2002. Freeman and his wife saw the white cloud and went outside. Freeman's wife's lungs started burning, as if she were breathing ammonia. Freeman and his family immediately left. Law enforcement officials instructed all the other residents in Freeman's subdivision to evacuate immediately. Due to the evacuation, Freeman had to arrange other lodging for his family. They drove to the home of his wife's parents in Oak Ridge, where they stayed until they returned home on Wednesday. Freeman could not enter his home or community during the evacuation, and because he and his wife did not have any time to pack any clothes or other belongings, neither had suitable work clothes and thus missed work on Monday, Tuesday, and Wednesday, September 18-20, 2003. Additionally, Freeman states that he spent two more days away from work cleaning up property that remained outside and was potentially exposed to the sulphuric acid. Freeman states that he knows of "many others" in his community that were forced to evacuate and incurred additional expenses, and he also testifies that he is concerned about the possible effects on his family, friends, home, and property. [Doc. 35, Affidavit of Bret Freeman].

Additionally, the plaintiffs rely upon the following figures provided by defense counsel in a letter dated July 8, 2005, to establish the numerosity of the class:

> 1. There are 963 households located in the 1.3 mile radius, of which 827 households received payments totaling $343,353.19; and
>
> 2. There are 7,010 households in the 3.0 mile radius (including the 963 households in the 1.3 mile radius), of which a total of 1,864 households received payments totaling $694,185.89.

9

[Doc. 105 Ex. 2]. In a letter to the Court dated July 14, 2005, the plaintiffs state that they "believe that 3 people to a household is a fair number" and therefore, "21,030 people were within the three mile zone," leaving 5,146 households and approximately 15,400 people who, in the plaintiffs' estimation, have not been compensated within the three mile area. [Doc. 105 Ex. 3].

    **B.**    **Defendants' Argument**

The defendants argue that the plaintiffs' motion for class certification should be denied because: (1) the plaintiffs have failed to show that there are any potential members remaining in the proposed class and (2) the plaintiffs cannot demonstrate that they have claims typical of the claims of the proposed class members. [Doc. 81].

**III.**    **ANALYSIS**

As an initial matter, the Court must determine the parameters of the class proposed by the plaintiffs. The Renewed Motion for Class Certification [Doc. 75] seeks to certify a class consisting of all persons who were evacuated by law enforcement as a result of the derailment and toxic spill and who suffered economic losses as a result of the evacuation. This proposed class definition specifically excluded personal injuries "in any form." The defendants argue that the exclusion of personal injury claims from the claims of the proposed class precludes recovery of damages for inconvenience, discomfort, and annoyance experienced as a result of the evacuation. The plaintiffs argue, on the other hand, that such damages are "economic losses" recoverable under a theory of nuisance and do not constitute damages for personal injury. Furthermore, at the hearing, the undersigned questioned the plaintiffs extensively about the limitation of the proposed class to

10

only those who were evacuated, when Cynthia Turnage, one of the proposed class representatives, was not in fact evacuated from her residence because she was not at home at the time of the derailment. Presumably in response to these arguments, the plaintiffs sought to "clarify" the proposed class definition in their letter of June 15, 2005. [Doc. 95]. The plaintiffs' letter, however, did little to clarify matters, as it referenced the allegations set forth in the First Amended Complaint, which had already been superseded by another amended complaint. Moreover, the plaintiffs' letter proposed a class consisting of evacuees and non-evacuees, even though the plaintiffs had voluntarily dismissed all non-evacuee allegations with the filing of the Second Amended Complaint. Further, the letter states that the plaintiffs were in the process of obtaining additional affidavits to satisfy the Court that the class is adequately represented. However, in the three months since the filing of the plaintiffs' letter, no such affidavits have been forthcoming.

The plaintiffs' proposed class definition shifted again with the filing of the Third Amended Complaint, which references a proposed class consisting of all persons who evacuated, sheltered in place or were prevented from returning to their homes as a result of, and within a three mile radius of, the derailment and toxic spill.

Based upon the plaintiffs' filings and, particularly, the Third Amended Complaint, the Court will consider, for the purposes of this motion, that the plaintiffs are seeking certification of a proposed class consisting of the following:

> All persons (1) who evacuated their real property and/or "sheltered in place," and/or were prevented from returning to their homes and (2) who suffered all available nuisance damages, including economic losses and inconvenience, as a result of, and within a three mile radius from, the derailment and toxic spill.

11

Having determined the parameters of the proposed class for the purposes of this motion, the Court will now turn to the issue of whether the proposed class may be certified. In order to obtain class certification, the plaintiffs must establish each of the following threshold requirements: (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation. See Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir. 2002).[5]

### A. Numerosity

The first requirement under Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). However, while "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." McGee v. East Ohio Gas Co., 200 F.R.D. 382, 389 (S.D. Ohio 2001) (quotation marks and citations omitted). The party seeking class certification bears the burden of proving impracticability, and "mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." 7A Charles Alan

---

[5]Even if the plaintiffs satisfy the four requirements for class certification pursuant to Rule 23(a), the plaintiffs must further demonstrate that they satisfy one of the three types of class actions set forth in Fed. R. Civ. P. 23(b). Because the undersigned finds that the plaintiffs have failed to satisfy the threshold requirements of Rule 23(a), it is unnecessary to analyze whether the plaintiffs have satisfied the requirements of Rule 23(b).

Wright, Arthur R. Miller, and Mary K. Cane, Federal Practice and Procedure § 1762 (3d ed. 2001). Finally, the Court must engage in a "rigorous analysis" when evaluating the plaintiff's proof of numerosity. See General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

To establish numerosity, the plaintiffs rely upon the figures provided by the defendants [Doc. 105 Ex. 2], which indicate that there are 7,010 households within three miles of the derailment site. The plaintiffs state that they "believe" three people to a household to be "a fair number" and that there are therefore 21,030 potential class members in the three-mile zone. The figures provided by the defendants also indicate that approximately 1,864 households within the three-mile area have already received compensation from Norfolk Southern. Of the 963 households within the 1.3-mile mandatory evacuation area, 827 households have already received compensation. The plaintiffs argue that the compensated residents should remain part of the class, as Norfolk Southern may still be potentially liable for new damage and injury claims for these individuals.

The Sixth Circuit recently addressed the issue of numerosity in Golden v. City of Columbus, 404 F.3d 950 (6th Cir. 2005). In Golden, the putative class of plaintiffs consisted of Columbus tenants whose water service was or was going to be terminated because of a prior tenant's or the landlord's indebtedness. Id. at 966. To establish impracticability of joinder, the plaintiff Golden relied upon the number of renters in Columbus (150,000). Id. While the Court noted that it had no reason to dispute this figure, it found merely referring to this number was not sufficient to establish numerosity under Rule 23(a)(1):

> Golden must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent. The gravamen of Golden's equal protection claim is that the City irrationally terminates certain tenants' water

13

> service. Golden does not allege that <u>all</u> tenants in Columbus are at risk of constitutional harm, only those whose predecessors or landlords are indebted to the City. Thus, reference to the total number of tenants in Columbus is not probative of the number of tenants reasonably likely to face the harm for which Golden seeks redress. Of course, the total number of tenants in Columbus is probative in the very limited sense that it represents the absolute maximum number of plaintiffs that could be in any class action brought by a tenant against the City. But the district court must engage in a "rigorous analysis" when evaluating the plaintiff's proof of numerosity.

<u>Golden</u>, 404 F.3d at 966. Accordingly, the Court affirmed the district court's denial of the motion for class certification. <u>Id.</u>

While the plaintiffs in the present case have established the maximum number of households within the three-mile area, they have produced little more than sheer speculation to show that residents in that area, other than the named plaintiffs, have in fact suffered damages as a result of the derailment. Furthermore, there is no evidence before the Court to suggest that those residents who have already received compensation from Norfolk Southern (and who presumably suffered damages) have not been fully compensated for their injuries. Thus, the undersigned finds that the proof relied upon by the plaintiff, without more, is too speculative to satisfy the numerosity requirement. <u>See</u> <u>Golden</u>, 404 F.3d at 966. Finally, the undersigned is of the opinion that because the potential class members are in such a limited geographical area, joinder of any potential plaintiffs in the future would be relatively easy. <u>See</u> <u>Andrews v. Bechtel Power Corp.</u>, 780 F.2d 124, 131-32 (1st Cir. 1985) ("Joinder is considered more practicable when all members of the class are from the same geographical area."); <u>McGee</u>, 200 F.R.D. at 388.

For these reasons, the undersigned finds that the first requirement of Rule 23(a)(1) has not been satisfied.

14

### B. Commonality

The second requirement of Rule 23(a) is that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Although Rule 23(a)(2) is couched in terms of "questions," there need be only one question common to the class to satisfy this requirement. See Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998).

The defendants do not argue that the plaintiffs have to establish commonality, and the undersigned finds that the plaintiffs have a made a sufficient showing of common questions of law and fact in this case. Accordingly, this requirement of Rule 23(a)(1) will be deemed satisfied.

### C. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so goes the claims of the class." Sprague, 133 F.3d at 399.

Plaintiff Freeman was evacuated and prevented from returning home for several days as a result of the derailment. While Plaintiff Turnage's residence was in the mandatory evacuation area, she was not subject to mandatory evacuation because she was not at home at the time of the derailment. However, she also claims that she was prevented from returning home for several days. Neither proposed class representative, however, "sheltered in place" or was located in the "suggested" evacuation zone. Accordingly, it does not appear that Freeman's and Turnage's claims are typical of the claims of all of the members of the proposed class.

### D. Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy of representation, the proposed class representatives must show that (1) they have a common interest with members of the proposed class, and (2) they "will vigorously prosecute the interests of the class through qualified counsel." Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir. 1976). "The adequate representation requirement overlaps with the typicality requirement because "in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." In re Am. Med. Sys., 75 F.3d at 1083.

In this case, the Court has concluded that the named plaintiffs' claims are not typical of the claims of the proposed class members. For the same reasons, the Court concludes that the named plaintiffs would not be adequate class representatives as well. The undersigned would note for the record that there is no doubt that plaintiffs' counsel is more than qualified to manage the proposed class action; however, competent counsel alone is not sufficient to satisfy the requirement of adequacy of representation.

## IV. CONCLUSION

For the foregoing reasons, the undersigned concludes that the requirements of Fed. R. Civ. P. 23(a)(1) have not been satisfied in this case. Accordingly, it is hereby

16

**RECOMMENDED**[6] that the Plaintiffs' Renewed Motion for Class Certification [Doc. 75] be **DENIED**.

                                      Respectfully Submitted,

                                            s/ H. Bruce Guyton
                                        United States Magistrate Judge

---

[6]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).