# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

BRET D. FREEMAN,          )
                             )
      Plaintiff,           )
                             )
v.                          )     No.  3:03-CV-341
                             )     (Phillips)
NORFOLK SOUTHERN CORPORATION,   )
and NORFOLK SOUTHERN COMPANY,    )
                             )
      Defendants.        )

## FINDINGS OF FACT AND CONCLUSION OF LAW

      A bench trial was held on plaintiff's claim for private nuisance.  Following the trial, the parties filed proposed findings of fact and conclusions of law.  Having heard the testimony of the parties, having reviewed the exhibits introduced into evidence, and having considered the parties' proposed findings and conclusions, the following are the Court's findings of fact and conclusions of law:

## Findings of Fact

      For purposes of this action only, defendants admit that a derailment took place; that a single tank car containing Oleum, or sulfuric acid, ruptured; and that as a result of that incident, the plaintiff was evacuated from his home.  The only issue litigated in this matter

1

is what, if any, damages the plaintiff incurred under a theory of private nuisance.

On September 15, 2002, at approximately 11:20 a.m., Norfolk Southern Company ("Norfolk Southern") train (number 15T) derailed in Knox County, Tennessee, causing a tanker filled with Oleum to rupture and spew fuming Oleum into the air above portions of Blount and Knox County, Tennessee. Emergency management agency personnel from Knox County responded and implemented a mandatory evacuation of residents living within a 1.3 mile radius of the derailment site and an optional, or voluntary, evacuation of residents living within a 3 mile radius of the derailment site. The isolation areas were maintained to prevent exposure to the public until it was determined that it was safe for residents to re-enter the area. The 1.3 mile mandatory evacuation distance and the 3 mile voluntary evacuation distance applied from the beginning of the incident on Sunday, September 15, 2002, until 9:00 p.m. on Monday, September 16, 2002, when the evacuation was lifted for nine subdivisions, reducing the evacuation distance down to less than one mile radius from the derailment site. At 7:00 a.m. on Tuesday, September 17, 2002, the evacuation was lifted in its entirety, and all residents were allowed to return to their homes. The status of the evacuation was communicated to the public by radio, television, print media, an information telephone line for questions, and the Norfolk Southern Hotline.

Plaintiff Bret Freeman ("Freeman") lived approximately 1.1 miles from the derailment site in the Mallard Bay subdivision. On the 15th of September, Freeman, his wife, and his step-daughter, evacuated their home immediately following the derailment and drove to the home of Freeman's in-laws, which was approximately 30 minutes away. The plaintiff took

2

only the family's pets, four dogs and three cats, leaving behind food, clothing, and personal hygiene items. Freeman and his family remained at his in-laws' home until Wednesday, September 18, 2002. There is no evidence in the record that plaintiff either read about, heard about, or was otherwise made aware of the fact that the mandatory evacuation had been reduced in size or was lifted until Wednesday morning. It was at that time that plaintiff and his family returned home.

As a result of the derailment, plaintiff was unable to work Sunday through Wednesday; suffered appreciable and substantial inconvenience; and incurred out-of-pocket expenses for food, personal items, and the cost of water related to plaintiff having to partially drain and refill his swimming pool. Plaintiff states that, after he returned home, he washed both his and his neighbors' boats and jet skis, as well as pressure washed the outside of his home. Plaintiff estimates that his out-of-pocket expenses, with respect to the swimming pool water, food, and personal items, total $400.00. As to lost wages, plaintiff states in his findings of fact that he normally works "11 hours a day in a 55 hour work week, . . . [and] that a conservative estimate of his annual income was $103,800.00, or $50.00 per hour."[1] In plaintiff's estimation, he calculates that he was deprived of, and should be awarded, "$3,600.00 for losing 72 hours worth of work." Lastly, the plaintiff estimates that a fair and appropriate sum to compensate him for his inconvenience is "$1,000.00 per day for each day he was away from home (Sunday, Monday, and Tuesday), for a total of $3,000.00." In sum, plaintiff proposes a damages calculation of $7,000.00 as result of the

---

[1] Plaintiff's actual testimony is that he earned approximately $102,800.00 "and something" in 2001 and between $80,000.00 and $70,000.00 in 2002.

3

derailment.

The defendants counter plaintiff's damage assessment. The defendants state that the plaintiff failed to take advantage of readily available assistance provided by Norfolk Southern, which included home testing and clean-up; that the plaintiff did not return to his residence and to work immediately after the evacuation was reduced and/or lifted; that plaintiff's lost wages claim of 72 hours reaches beyond the time plaintiff was away from home; that plaintiff was paid his base salary during the time he claims he did not work; that plaintiff admits that he could have made up for lost bonuses; and that plaintiff has not provided any receipts or other documentation to support his claim of damages.

## **Conclusions of Law**

A private nuisance under Tennessee law is defined as " 'anything which annoys or disturbs the free use of one's property, or which renders its ordinary use of physical occupation uncomfortable . . . [and] extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.' " *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364 (Tenn. 2002) (*quoting Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981)). The development of nuisance law dates back to the twelfth century in England and has evolved to encompass physical conditions to the land, such as vibrations, pollution, or flooding; conditions on adjoining property that impair the occupant's tranquility, such as conducting an unlawful business or keeping diseased animals; and causing discomfort or

4

inconvenience to the occupants of the property, such as odor, dust, smoke, or noise. *Lane*, 92 S.W.3d at 365 (citations omitted).

Several type of damages are available to compensate an occupant who has been subjected to private nuisance. "[I]n cases involving a temporary private nuisance, which is one that can be corrected, damages may be awarded for the cost of restoring the property to its pre-nuisance condition, as well as damages for inconvenience, emotional distress, and injury to the use and enjoyment of the property." *Id.* (*citing Pryor v. Willoughby*, 36 S.W.3d 829, 831 (Tenn.Ct.App. 2000); *Fink v. Crean*, No. M2005-01364-COA-R3-CV, 2006 WL 3783541, at *8 (Tenn.Ct.App. Dec. 21, 2006). Such damages are not mutually exclusive. *Pryor*, 36 S.W.3d at 331 *(citing Citizens Real Estate v. Mountain States Development Corporation*, 633 S.W.2d 763, 767 (Tenn.Ct.App.1981)). Also, nuisance does not relate to a defendant's conduct, but a type of harm suffered by a plaintiff. *See Zollinger v. Carter*, 837 S.W.2d 613, 615 (Tenn.Ct.App.1992).

The defendants argue that plaintiff cannot allege inconvenience damages because plaintiff has not specifically alleged damages for diminution of the value of property or rental value of the property. The defendants cite *Smith v. Murray County*, No. 01-A-01-9804-CH-00207, 1999 WL 675135 (Tenn.Ct.App. Sept. 1, 1999) in support of their argument. However, in the *Smith* case, the Court merely held that "damages shall not include an award for discomfort, annoyance, and inconvenience *separate and apart* from the diminution of rental value." *Smith*, 1999 WL 675135 at *5 (emphasis added). In other words, the Court was concerned with awarding duplicative damages. In fact, a court can

5

award inconvenience damages without the establishment of diminution of rental value. *See Myer v. King*, No. 86-257-II, 1987 WL 6549, at *2 (Tenn.Ct.App. Feb. 13, 1987) (awarding discomfort, inconvenience, and incidental damages, despite the fact that the plaintiffs did not offer any proof on the diminution of the rental value of their property).

In the instant situation, it is undisputed that the defendants interfered with the use and enjoyment of plaintiff's property. Defendants, themselves, ordered an evacuation in light of fuming Oleum spreading across Knox and Blount County. Any inconvenience associated with evacuating the property would proceed from the direct injury to the usable value of the premises. This is not a situation where a plaintiff did not present sufficient evidence that a nuisance affected his or her property. Accordingly, inconvenience damages can be properly assessed against the defendants.

Furthermore, a court will assess plaintiff's damages, if any, at such an amount as in a court's judgment and discretion will fairly and adequately compensate the plaintiff for his loss, that is, to make the wronged party whole as nearly as may be done by an award of money. *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 703 (Tenn.Ct.App. 1999). Additionally, a party seeking damages has the burden of proving them. *Id.* While the damages do not have to be mathematically precise or exact, the damages cannot be based on mere conjecture or speculation. *Id.* However, uncertain or speculative damages are prohibited only when the existence, not the amount, of damages is uncertain. *Id.* The evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty. *Id.* Proof of damages must be as certain as the nature of the

6

case permits and must enable the trier of fact to make a fair and reasonable assessment of the damages. *Id.*

Additionally, a plaintiff has a duty to mitigate his or her damages, that is, an injured party is charged with a duty to exercise reasonable care and due diligence to avoid loss or minimize damages after suffering injury. *Kline v. Benefiel,* No. W1999-00918-COA-R3-CV, 2001 WL 25750, at *7 (Tenn.Ct.App. Jan. 9, 2001) (*citing Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.,* 480 S.W.2d 542, 545 (Tenn.Ct.App. 1971); *Gilson v. Gillia,* 321 S.W.2d 855, 865 (Tenn.Ct.App. 1958)).

In the instant matter, since liability is conceded as to this plaintiff, the Court must make findings with respect to a damage award. Plaintiff claims his damages as follows: 1) out-of-pocket expenses were approximately $400 for food, clothing, toiletries, and water costs to refill the family's swimming pool; 2) a loss of 72 hours of work at a rate of $50.00 an hour to total $3,600.00; and 3) inconvenience damages valued at $1,000.00 for Sunday, Monday, and Tuesday to total $3,000.00. The Court finds plaintiff's claim of incidental damages to be reasonable, sufficiently precise, as well as modest, and therefore accepts plaintiff's calculation of $400 for food, clothing, toiletries, and swimming pool water.

The Court also finds that, as a result of the incident, the plaintiff indeed lost wages. In light of plaintiff's duty to mitigate his damages, the Court limits plaintiff's lost work to four days, Sunday through Wednesday. Based on plaintiff's testimony in which he referred to his 2001 tax returns where he grossed approximately $102,800.00 and estimated that he

7

worked 5 days a week, the Court adopts a daily rate figure of $395.00 per day. Given plaintiff's testimony regarding the fluctuation of sales week to week, as well as plaintiff's varying work hours, an average daily rate of plaintiff's wages based on the previous year's annual salary is the best indicator of wages lost, when estimating pay loss for several days.[2] Therefore, plaintiff's lost wages total $1,580.00. While it is true that the plaintiff was paid his regular base salary the week of the incident and could have "worked harder" in subsequent weeks to meet sales goals, the plaintiff was still deprived of time designated for work, which is ultimately lost. Additionally, in light of the plaintiff's testimony as to his annual income and available social security records, the Court finds that plaintiff's lost wages are sufficiently established with reasonable certainty.

As to plaintiff's claim for inconvenience damages, the Court is cognizant that, for several days, the plaintiff was forced to provide arrangements for his family and pets, forced to contend with complications directly from a disruption of his life; and unable to perform normal obligations. However, the Court finds that plaintiff's inconvenience injuries do not warrant $1,000.00 per day. After careful consideration of the plaintiff's testimony, the Court feels that an amount of $500.00 per day for Sunday, Monday, and Tuesday, would adequately compensate the plaintiff for his inconvenience. In summation, the plaintiff's total damages amount to $3,480.00.

---

[2]While defendants allege that the plaintiff should have returned to his residence by Monday, September 16, at 9:00 p.m. or by Tuesday, September 17, at 7:00 a.m., it is not unreasonable for the plaintiff to have returned Wednesday morning either in light of being unaware of the status of the evacuation or in light of preparing to return to his residence to confront any problems that might await him.

**<u>Conclusion</u>**

The Court hereby finds that the plaintiff is entitled to damages resulting from a nuisance created by defendants.  After an examination of the applicable law and record of the case, the Court concludes that the plaintiff shall be awarded monetary damages in the amount of $3,480.00.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Plaintiff shall be awarded incidental damages, lost wages, and inconvenience damages in the amount of $3,480.00, to be paid by defendants.

2.      Costs of this action shall be taxed pursuant to E.D. TN. LR 54.1.

**IT IS SO ORDERED.**

                              **ENTER:**

                              _____s/ Thomas W. Phillips_____
                              United States District Judge

9